

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH J. BALSAMO, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 04 C 6172 |
| ) | |
| ONE SOURCE, NORTHERN ) | |
| REGIONAL COMMUTER RAILROAD ) | |
| CORPORATION, d/b/a METRA, ) | |
| KATHY BRAKEBILL, and RAY FOX, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Joseph Balsamo alleges that Defendant One Source wrongfully discharged him from his employment as chief engineer at a building owned by Northern Regional Commuter Railroad Corporation ("METRA"). Balsamo has brought a five-count Complaint alleging breach of contract against One Source (Count I), violations of Title VII and ADEA against One Source and METRA (Count II), breach of service contract against One Source and METRA (Count III), defamation against One Source, METRA, and former co-workers, Kathy Brakebill and Ray Fox (Count IV), and conversion against One Source, METRA, Brakebill, and Fox (Count V). Defendants move to dismiss Count I of the Complaint pursuant to Rule 12(b)(7) for failure to join a necessary party under Rule 19. Defendants also seek to dismiss Counts III and IV of the Complaint pursuant to Rule 12(b)(6) for failure to state a claim. For the reasons set forth below, the Court partially grants and partially denies Defendants' motion to dismiss.

## BACKGROUND

Plaintiff Joseph Balsamo has been employed for more than 24 years as the chief engineer at a building located at 547 West Jackson in Chicago, Illinois. (R.1-1, Compl. ¶¶ 9-10.) At all relevant times, Northern Regional Commuter Railroad Corporation ("METRA") has owned and managed the 547 West Jackson building. (*Id.* ¶ 10.) Since 1997, Defendant One Source, an Illinois corporation that has a service contract to provide janitorial and maintenance services to Defendant METRA, has employed Balsamo. (*Id.* ¶¶ 9-10.) Both METRA and One Source have given Balsamo excellent reviews and special recognition for his work as chief engineer. (*Id.* ¶¶ 11-12.)

In 2003, METRA invited bids from qualified firms to provide janitorial and stationary engineering services at the 547 West Jackson building. (*Id.* ¶¶ 50, 54.) The bid required the contractor to retain the permanent employment of the building's present chief engineer, that is, Balsamo. (Id. ¶ 51). One Source successfully bid on the service contract and has since been contractually bound to provide janitorial and engineering services to METRA. (*Id.* ¶ 51.)

One Source is also a party to a Collective Bargaining Agreement ("CBA") with the International Union of Operating Engineers, Local 399 ("Union") of Chicago, Illinois. (*Id.* ¶ 15.) The CBA, effective since 2001, governs the terms and conditions of One Source's employees, including Balsamo. (*Id.* ¶ 15.) Section 5 of the CBA requires that employee discharges must be for "cause." (*Id.* ¶ 28.)

On January 8, 2004, based upon a complaint by Defendant Kathy Brakebill, METRA's Director of Facility Management at the 547 West Jackson building, One Source issued Balsamo a Discipline Notice. (*Id.* ¶¶ 6, 19.) The Notice alleged that Balsamo had failed to follow Brakebill's instructions, thereby violating the employer's safety rules. (*Id.* ¶ 19.) On January

27, 2004, based upon another complaint by Brakebill, One Source prepared a second Discipline Notice. (*Id.* ¶ 20.) Finally, on March 31, 2004, One Source, again at Brakebill's request, prepared a third Discipline Notice, suspending Balsamo. (*Id.* ¶ 21.) One Source failed to provide Balsamo with a copy of both his second and third Discipline Notices, violating a provision of the CBA. (*Id.* ¶¶ 20-21.) Based upon these incidents, One Source discharged Balsamo on April 9, 2004. (*Id.* ¶ 27.)

Balsamo also alleges that Defendants Kathy Brakebill and Ray Fox, One Source's new Chief Engineer at 547 West Jackson, defamed him by accusing him of gross acts of dishonesty. (*Id.* ¶¶ 6, 59, 60, 61.) Specifically, in March 2004, Kathy Brakebill accused Balsamo of searching her desk, claiming that items were missing. (*Id.* ¶ 59.) Then on April 1, 2004, Ray Fox accused Balsamo of taking a power washer owned by METRA to the home of Rick Mikrut, the former Director of Facility Management. (*Id.* ¶ 60.) Finally, on June 30, 2004, Fox accused Balsamo of ordering contractors to pay Balsamo and Rick Mikrut 50 % of their profits for work performed at the 547 West Jackson building. (*Id.* ¶ 61.)

## LEGAL STANDARDS

### I. Rule 12(b)(7) Standard

Rule 12(b)(7) provides for dismissal of an action where a litigant fails to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). In ruling on a motion to dismiss for failure to join a necessary and indispensable party, the Court must accept the allegations of the complaint as true. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001). Additionally, the defendants have the burden of showing that a party must be joined for just adjudication. *Ploog v. HomeSide Lending, Inc.*, 209 F.Supp.2d 863, 873 (N.D. Ill. 2002); *Central States, Southeast & Southwest Area Pension Fund v. Safeco Ins. Co. of Am.*, 717 F.Supp. 572, 573 (N.D. Ill. 1989).

In assessing a Rule 12(b)(7) motion to dismiss, the Court must apply a two step inquiry. *Thomas v. United States*, 189 F.3d 662, 666 (7th Cir. 1999). First, the Court must determine whether a party is necessary to the action. *Id.* In making this determination, the Court analyzes three factors: (1) whether complete relief can be accorded among the parties without joinder, (2) whether the absent person's ability to protect his own interest will be impaired, and (3) whether any existing parties might be subject to risk of multiple or inconsistent obligations. *Id.* (citing Fed. R. Civ. P. 19(a)); *see also Davis*, 268 F.3d at 481. Second, where the Court decides a party is necessary but cannot be joined, the Court must then determine whether the party is indispensable to the action. Fed. R. Civ. P. 19(b); *see also Thomas*, 189 F.3d at 666.

## II. Rule 12(b)(6) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "Even with respect to elements of the plaintiff's claim, complaints need not plead facts or legal theories." *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). The Court will only grant a motion to dismiss if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Coney v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## ANALYSIS

### I. Breach of the Collective Bargaining Agreement – Count I

In Count I, Balsamo alleges that, under Section 301 of the Labor Management Relations Act, Defendant One Source discharged him without cause, thereby violating the CBA. The International Union of Operating Engineers, Local 399 ("Union") and One Source are parties to the CBA, which governed the terms and conditions of Balsamo's employment since July 1,

4

2001. Although he did not join the Union as a party to this action, Balsamo also has alleged that the Union breached its duty of fair representation. As a result, One Source argues that the Court should dismiss Count I for failure to join a necessary party under Federal Rule of Civil Procedure 12(b)(7), contending that unions are always necessary parties to Section 301 actions against employers when there are allegations against the union as well. The Court disagrees.

In general, an employee seeking a remedy for an alleged breach of a CBA must attempt to exhaust his contractual remedies under the CBA before filing a lawsuit against his union or employer under Section 301(a) of the Labor Management Relations Act. *Clayton v. UAW*, 451 U.S. 679, 685, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Arnold v. United Mine Workers of Am.*, 293 F.3d 977, 978 (7th Cir. 2002). If an employee can show that the grievance process has been subverted, such as establishing that his union did not represent him fairly in the grievance procedure, the employee may bring a lawsuit under Section 301, notwithstanding the outcome of the grievance or arbitration proceedings. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). To maintain a Section 301 claim under these circumstances, the employee must first allege that the union breached its duty of fair representation. *McLeod v. Arrow Marine Transport, Inc.*, 258 F.3d 608, 613 (7th Cir. 2001).

Although the breach of duty allegation against the Union is a predicate to this "hybrid" Section 301 breach of contract claim, the Union itself is not a necessary party to this action. *See DelCostello*, 462 U.S. at 165. In *DelCostello*, the United States Supreme Court held that "the employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other or both." *Id.*; *see also Vaca v. Sipes*, 386 U.S. 171, 187, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

5

Despite *DelCostello*'s clear holding, One Source relies heavily on a 1975 district court decision for the proposition that unions are always necessary parties to a "hybrid" Section 301 claim. *See Bradley v. Ford Motor Co.*, 417 F.Supp. 23, 25 (N.D. Ill. 1975). Although the *Bradley* court determined that the employee's union was a necessary party, Defendants' reliance on *Bradley* is misplaced. The court decided *Bradley* almost a decade prior to the *DelCostello* opinion, in which the Supreme Court concluded that a union is not a necessary party to a "hybrid" breach of contract claim under Section 301. *See* 462 U.S. at 151. *DelCostello* is controlling.

Here, Balsamo alleges that One Source breached the CBA by firing him without cause, thereby violating Section 5 of the CBA. Further, Balsamo alleges that the Union breached its duty of fair representation. Although the Union's breach is a necessary element to this Section 301 claim, the Union itself is not a necessary party. *See DelCostello*, 462 U.S. at 165. Accordingly, the Court denies One Source's motion to dismiss Count I.

## II. Breach of Service Contract – Count III

In Count III, Balsamo alleges that Defendants One Source and METRA breached the service contract requiring One Source to maintain Balsamo's full-time employment. Defendants contend that the Court should dismiss Count III for failure to state a claim because Balsamo is not a third-party beneficiary to the contract. The Court agrees and dismisses Count III.

Under Illinois law, it is well-settled that a contract must be entered into for the direct benefit of a third person before that person will be permitted to sue for breach of the contract. *Altevogt v. Brinkoetter*, 85 Ill.2d 44, 54-55, 51 Ill. Dec. 674, 421 N.E.2d 182 (Ill.1981). A third person is a direct rather than incidental beneficiary only if the contracting parties have manifested their intent to confer a benefit upon the third party. *Id.* The parties' intent to confer a

6

direct benefit "must affirmatively appear from the language of the instrument when properly interpreted and construed." *See Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 258, 178 N.E. 498 (1931); *People ex rel. Resnick v. Curtis & Davis, Architects & Planners, Inc.*, 78 Ill.2d 381, 387, 36 Ill. Dec. 338, 400 N.E.2d 918 (1980). Accordingly, the Court must look to the terms of the contract to discern the contracting parties' intent.[1]

In 2003, METRA invited bids from qualified firms to provide janitorial and engineering services at its 547 West Jackson building. The bidding contract provides: "***For the best interest of Metra and the 547 Building***, the contractor shall be required to retain the permanent employment of the building's present Chief Building Engineer and Night Building Engineer." (emphasis added). One Source won the bid and retained Balsamo's employment until he was discharged on April 9, 2004.

Under Illinois law, One Source and METRA must intend, through the language of the contract, to confer a direct benefit upon Balsamo. *See Carson Pirie Scott*, 346 Ill. 2d at 258. Here, the bidding contract expressly provides that Balsamo's employment is for the benefit of METRA and the 547 building, not Balsamo. Thus, based on the unequivocal language of the contract, the Court concludes that One Source and METRA did not intend to confer a direct benefit on Balsamo, and, as a result, Balsamo cannot maintain this claim. The Court dismisses Count III with prejudice.

---

[1] Because the interpretation of an unambiguous contract is a matter of law, *see Utility Audit, Inc. v. Horace Mann Serv. Corp*, 383 F.3d 683, 687 (7th Cir. 2004), the Court can determine this issue at this stage of the proceedings.

## III. Defamation – Count IV

In Count IV, Balsamo alleges defamation against Kathy Brakebill, Ray Fox, and their employers, One Source and METRA. First, Defendants Brakebill and METRA move to dismiss Count IV because they contend that they are protected under the Illinois Tort Immunity Act. Next, all Defendants argue that the Court should dismiss Count IV because their statements are subject to an innocent construction. Finally, all Defendants contend that the Court should dismiss Count IV for failure to meet the minimum pleading requirements as set forth in the Federal Rules of Civil Procedure. For the following reasons, the Court partially grants and partially denies Defendants' motion to dismiss Count IV.

### A. Illinois Tort Immunity Act

The Illinois Tort Immunity Act governs situations in which local governmental units and their employees are immune from civil liability. *See* 745 ILCS 10/2 *et seq.* Balsamo alleges that Defendant Brakebill, an employee of METRA, defamed him by accusing him of gross acts of dishonesty. Defendants METRA and Brakebill argue that the Illinois Tort Immunity Act protects them.

#### 1. METRA

Section 107 of the Illinois Tort Immunity Act provides that, "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous . . . ." 745 ILCS 10/2-101. Because Balsamo concedes that METRA is a local public entity under the Act, the Court dismisses Defendant METRA from Count IV.

#### 2. Brakebill

Section 201 of the Tort Immunity Act provides that, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an

8

injury resulting from his act or omission in determining policy when acting in the exercise of such discretion." 745 ILCS 10/2-201. For Section 2-201 of the Immunity Act to apply, a defendant must hold either a position involving the determination of policy or a position involving the exercise of discretion. *Harinek v. 161 N. Clark St. Ltd. P'ship*, 181 Ill.2d 335, 341, 230 Ill. Dec. 11, 692 N.E.2d 1177 (1998). In addition, a defendant's action that caused the injury complained of must constitute both a determination of policy and an exercise of discretion. *Id.* at 341. In other words, when an employee acts outside the scope of her employment, Section 201 does not provide her any protection. *See id.*; *see also Clarage v. Kumza*, 342 Ill. App. 3d 573, 586, 276 Ill. Dec. 995, 795 N.E.2d 348 (Ill.App.Ct. 2003). Thus, the Court must examine both Brakebill's position and the action that allegedly led to Balsamo's injury in order to determine if Section 201 offers her any protection.

METRA employs Brakebill as a building manager at its 547 West Jackson building. Even if the Court assumed that Brakebill holds a position where she exercises discretion and determines policy, Brakebill must have been acting pursuant to an official METRA policy for Section 201 to offer her protection. *See Harinek*, 181 Ill. 2d at 341. Here, Balsamo alleges that Brakebill defamed him by accusing him of gross acts of dishonesty. Although Brakebill's statements could have been made pursuant to an official METRA policy, such as employee evaluations, Balsamo alleges that Brakebill made those accusations while acting "individually" and published those statements to persons "for no legitimate business purpose." (R.1-1, Compl. ¶ 59). Viewing the complaint in the light most favorable to Plaintiff, the Court cannot dismiss Brakebill from Count IV based on the Illinois Tort Immunity Act.

## B. Innocent Construction Rule

Next, Defendants move to dismiss Count IV based on their contention that their alleged statements are subject to an innocent construction, and thus are not actionable. Under Illinois law, a defamatory statement is one that "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 726 (7th Cir. 2004) (citing *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 10, 180 Ill. Dec. 307, 607 N.E.2d 201 (Ill. 1992)). Defamatory statements may either be defamatory *per se* or defamatory *per quod*. *See Republic Tobacco Co.*, 381 F.3d at 726; *Kolegas*, 154 Ill.2d at 10. A statement is defamatory *per se* if the words are obviously harmful to the plaintiff's reputation because they impute to the plaintiff (1) the commission of a criminal act, (2) the lack of ability in the performance of his profession or business, or (3) a want of integrity in the discharge of his office or employment. *Republic Tobacco Co.*, 381 F.3d at 726; *see also Costello v. Capital Cities Communications, Inc.*, 125 Ill.2d 402, 424, 126 Ill. Dec. 919, 532 N.E.2d 790 (Ill. 1988). Statements that are defamatory *per quod*, on the other hand, require extrinsic facts to explain the defamatory character of the statements. *See Kolegas*, 154 Ill.2d at 10.

Even if a challenged statement falls into one of the categories indicating that it is defamatory *per se*, the claim will not be actionable if the statement is reasonably capable of an innocent interpretation. *Id.* at 11; *see also Republic Tobacco Co.*, 381 F.3d at 726-27. "The innocent-construction rule requires courts to consider a written or oral statement in context, giving the words their natural and obvious meaning. If, so construed, a statement 'may reasonably be innocently interpreted,' it will not be regarded as defamatory *per se*." *Kolegas*, 154 Ill.2d at 11 (citation omitted). The Illinois Supreme Court, however, has cautioned lower

10

courts against searching to find a plausible innocent meaning where the defamatory meaning is the more reasonable interpretation. *See Chapski v. Copley*, 92 Ill. 2d 344, 351-352, 65 Ill. Dec. 884, 442 N.E.2d 195 (Ill. 1982). In the case of statements allegedly imputing the commission of a criminal offense, "the words charging the commission of a crime need not meet the technical requirements which are necessary for an indictment, [but] the words must fairly impute the commission of a crime." *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill.App.3d 30, 46, 225 Ill.Dec. 944, 684 N.E.2d 935, 947 (Ill.App.Ct. 1997). Whether statements are capable of an innocent construction is a question of law. *See Republic Tobacco Co.*, 381 F.3d at 727.

Here, Defendants contend that the statements made by Brakebill and Fox are capable of a reasonable innocent construction, and thus the claims are not actionable. In support of its position, Defendants cite Illinois cases in which courts have dismissed claims of *per se* defamation. *See Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 217 Ill. Dec. 720, 667 N.E.2d 1296 (Ill. 1996); *Valentine v. North Am. Co. For Life & Health Ins.*, 60 Ill.2d 168, 328 N.E.2d 265 (Ill. 1974); *Taradash v. Adelet/Scott-Fetzer Co.*, 260 Ill. App. 3d 313, 195 Ill. Dec. 420, 628 N.E.2d 884 (Ill.App.Ct. 1993). In these cases, the statements at issue prejudiced the employee in their profession or trade. *See, e.g., Valentine*, 60 Ill.2d at 170 ("It is plaintiff's contention that the words . . . were injurious to plaintiff in his profession"); *Taradash*, 260 Ill.App.3d at 315 (plaintiff would no longer be employed "because of lack of performance"); *Anderson*, 172 Ill.2d at 399 (plaintiff "did not follow up on assignments" and "could not get along with her coworkers").

These cases are distinguishable because Balsamo has specifically alleged that Brakebill and Fox's statements (1) impute the plaintiff in the commission of a crime, or (2) impute a lack of integrity in the plaintiff's business. Simply put, Defendants' statements accuse Balsamo of

11

stealing items from METRA and Brakebill, as well as ordering kick-backs from various contractors. *See Adams,* 292 Ill.App.3d at 46.

Defendants try to explain away these statements by arguing that Balsamo may have been authorized to take the items off Brakebill's desk and the power washer to Rick Mikrut's home. Also, they argue that Balsamo could have been authorized to demand money from the contractors. Finally, Defendants contend that someone else may have taken the items from Brakebill's desk. The Court cannot reasonably accept the Defendants' alternative interpretations without "searching to find an innocent meaning, where a defamatory one is more obvious." *See Chapski,* 92 Ill.2d at 351. Therefore, the Court denies Defendants Brakebill and Fox's motion to dismiss Count IV based on the innocent construction rule.

### C. Pleading Requirements

Finally, Defendants argue that the Court should dismiss Count IV for failure to meet the minimum pleading requirements. Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Coney v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Also, the notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Balsamo alleges that Defendant Brakebill stated, "the Plaintiff was searching her desk, and that items were missing from her desk." Balsamo further alleged that "these statements were made to Ray Fox and One Source" in March of 2004. Finally, Plaintiff alleges that Defendant Brakebill "made and published this same or similar false statement regarding

Balsamo to other persons." Balsamo also contends Defendant Fox stated, "Plaintiff Balsamo took a power washer, owned by METRA, to the home of Rick Mikrut." Balsamo alleges that this statement was made to "other employees of METRA" on April 1, 2004. Defendant Fox also accused Balsamo of ordering contractors to pay him and another individual 50 % of their profits for work performed at the 547 W. Jackson building. Balsamo further alleges that this statement was made on June 30, 2004, and that these statements were conveyed to other individuals for no legitimate business purpose.

Balsamo has satisfied the minimum pleading requirements under Rule 8. He has put the Defendants on notice of his claims and the facts that support his claims. Accordingly, the Court denies Defendants' motion to dismiss Count IV for failure to meet the minimum pleading requirements.

## CONCLUSION

For these reasons, the Court grants Defendant One Source and METRA's motion to dismiss Count III, as well as Defendant METRA's motion to dismiss Count IV. The Court denies Defendant One Source's motion to dismiss Count I, as well as Defendant One Source, Brakebill, and Fox's motion to dismiss Count IV.

Dated: February 16, 2005

**ENTERED:**

_____
**AMY J. ST EVE**
**United States District Judge**

13